*In re* HAWAIIAN STAR NEWSPAPER ASSOCIATION,
LIMITED.

APPEAL FROM THE AUDITOR OF THE TERRITORY.

SUBMITTED APRIL 2, 1904.          DECIDED APRIL 13, 1904.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

The Legislature failed at its regular session in 1903 to provide for the
necessary expenses of the government for the succeeding biennial
period. In its extra session immediately after, it passed complete
appropriation bills for the first six months of the biennial period,
and bills providing for a portion of the necessary expenses of the
last eighteen months, but failed to provide for perhaps a half of
the necessary expenses for those eighteen months on the supposi-
tion that those expenses would be borne by counties under an act
which turned out to be void. Held,

That the expenses so unprovided for could be paid out of the last ap-
propriation bills by the Treasurer with the advice of the Governor
under section 54 of the Organic Act, and

That "the last appropriation bills," within the meaning of that section,
were those of 1901 and not the six-months bills of 1903.

OPINION OF THE COURT BY FREAR, C.J.

This is an appeal from a decision of the Auditor declining
to issue a warrant on a voucher made out in the usual form and
approved by the proper officers under the appropriation "inci-
dentals tax office," for $251.25 for certain printing and ship-
ping expenses incurred in January, 1904, by the tax bureau.
The ground of the refusal was that there was no such appro-
priation covering that period. The appellant contends, how-
ever, that this is a case in which, the legislature having failed

to make the required appropriation, "the Treasurer may, with the advice of the Governor, make such payments" under" the last appropriation bills", as provided in Section 54 of the Organic Act, which reads as follows:

"Sec. 54. That in case of failure of the legislature to pass appropriation bills providing for payments of the necessary current expenses of carrying on the government and meeting its legal obligations as the same are provided for by the then existing laws, the governor shall, upon the adjournment of the legislature, call it in extra session for the consideration of appropriation bills, and until the legislature shall have acted the treasurer may, with the advice of the governor, make such payments, for which purpose the sums appropriated in the last appropriation bills shall be deemed to have been reappropriated. And all legislative and other appropriations made prior to the date when this Act shall take effect, shall be available to the government of the Territory of Hawaii."

The legislature failed, at its regular session in 1903, to pass appropriation bills providing for payments of the necessary current expenses of carrying on the government and meeting its legal obligations as the same were provided for by the then existing laws, and, upon its adjournment, the Governor called it in extra session for the consideration of appropriation bills, as required by the section of the Organic Act just quoted. In extra session, the legislature, besides passing other appropriation bills which need not be further referred to, passed general bills, providing for salaries and expenses respectively, in the usual forms, for the biennial period July 1, 1903,-June 30, 1905, but, in view of the fact that it had passed a comprehensive county act at its regular session, most of the provisions of which were to take effect January 4, 1904, it did not as usual pass one bill for salaries and one for expenses covering the whole biennial period, but passed such bills, known as the six-months bills, covering all necessary payments for the last half of 1903 and other similar bills, known as the eighteen-months bills, covering only the necessary expenses of the Territorial government outside of those intended to be borne by the proposed counties, for 1904 and the first half of 1905. The county

act was held invalid *(Territory v. Supervisors, ante,* p. 365) and, as already intimated, no appropriations had been made for the eighteen-months period for those of the necessary expenses of the Territorial government which were to have been transferred to the counties. The Treasurer thereupon decided, with the advice of the Governor, to meet such expenses out of the last appropriation bills,—which were deemed to be the previous six-months bills. It is not disputed that the expenses now in question were "necessary current expenses" within the meaning of Section 54 of the Organic Act.

Two questions arise: (1) Whether this is a case in which payments under the last appropriation bills can be made at all, in other words, whether it is a case in which the legislature has not "acted" within the meaning of this section of the Organic Act, and (2) whether, if it is such a case, the "last appropriation bills" are the six-months bills passed by the legislature of 1903 or the regular biennial appropriation bills passed by the preceding legislature in 1901.

The legislature undoubtedly "acted" at its extra session, for it passed a number of appropriation bills, and no doubt supposed that it had completely provided for carrying on the government for the succeeding biennial period. But did it "act" within the meaning of this section of the Organic Act? That the word "acted," as used here, is not to be taken in a literal and restricted sense is clear. It most be construed. In a strict sense, the legislature would not only have acted but would have acted for the precise literal purpose for which it was called in extra session if it had merely "considered" appropriation bills, and, of course, if, besides considering them, it had actually voted on and rejected them. But no one would for a moment contend in such case that it had "acted" within the meaning of this law. It would seem to be almost as clear that it would not have so acted if it had passed appropriations for only one month or six months of the biennial period and omitted to make any appropriations at all for the remainder of the period, or if it had passed appropriations for one department of the govern-

ment for the whole period and omitted to pass any appropriations for any of the other departments. In the present instance it omitted to provide for perhaps a half of the necessary current expenses of the government for the last three-fourths of the biennial period. It omitted most of the appropriations required by certain departments and all those required by certain bureaus of the government for eighteen months.

The Organic Act contemplates appropriation bills for biennial periods. The regular sessions of the Legislature are biennial. Section 52 provides "that appropriations, except as otherwise herein provided, shall be made biennially by the legislature," and Section 53, "that the Governor shall submit to the legislature, at each regular session, estimates for appropriations for the succeeding biennial period." Then follows the section now in question. The failure to make the necessary provisions for carrying on the government would seem to mean for the biennial period. If any action whatever by the Legislature, however incomplete or inadequate, would preclude a resort to "the last appropriation bills," this section would be practically nugatory. Just what the full significance of the word "biennially" is, may be a matter of some doubt. If it means that every appropriation bill must cover a period of two years or that appropriation bills may be passed only once in two years, that is, at the regular session or the extra session immediately following the regular session, there would be extreme embarrassment. In such case most of the appropriation bills thus far passed by the Territorial Legislature might be void or the Legislature at its present special session might not be able to relieve the present financial situation at all by the passage of appropriation bills. This court has already held that the Legislature could divide the biennial period, by passing one set of bills for the time before the county act should take effect and another set for the time thereafter. *In re Boyd, ante,* p. 361. It may be that the word "biennially" in Section 52 was used, in part at least, with reference to the provisions of Section 54, in which case a failure to provide for a material portion of the biennial period or for a substantial

portion of the government, would clearly be a failure within the meaning of the latter section. These three sections are closely connected and are grouped under one subheading in the Organic Act and are adapted from certain sections in Article 70 of the Constitution of 1894. But, whether the construction of Section 54 may be affected by the construction of Section 52 or not, it is clear that its evident purpose requires us to hold that the Treasurer and Governor may, upon a failure of the Legislature to act, look to the last appropriation bills in order to meet the necessary current expenses of an essential portion of the government or for a material portion of the biennial period as well as for the entire government or the entire period.

This is not equivalent to holding that the Treasurer and Governor may supplement the action of the Legislature in the exercise of the legislative function of passing appropriation bills. Those officers do not make supplementary appropriations in cases of this kind. Congress has reappropriated for such cases appropriations already made by the Territorial Legislature. Those officers would no more legislate under circumstances like these than they would if the Legislature had failed to pass any appropriation bills. Whether those officers could make payments under the last appropriation bills in case the Legislature should intentionally omit a single appropriation as unnecessary without first specifically and independently repealing at its reg-ular session the law, if any, for the execution of which a similar appropriation had been made by the preceding Legislature, it is unnecessary to say. It will be time enough to decide that question when it arises. In the present case it is clear that the Legislature omitted to a very large extent to provide for essential functions of the government and for three-fourths of the biennial period and further that it had no intention of doing so. Nor is a distinction made in this section between cases of deliberate or intentional failure or failure in bad faith or through incompetence and failure through oversight or accident. The object of this provision was not to punish the Legislature but to preserve the government and that too without unduly prolonged or nu-

merous sessions of the Legislature. It was not intended that the
executive in the first instance or the judiciary in the second in-
stance should pass upon the question of the good faith of a co-
ordinate branch of the government. In this case of course it is
not questioned by any one that the legislative branch acted in the
utmost good faith and supposed that it had made full provision
for carrying on the government. The failure arose in conse-
quence of the invalidity of an act which was supposed to be valid.
If that would prevent the operation of this section, the same re-
sult would follow in case the Legislature should fail to make
any appropriation whatever in consequence of the invalidity of
the appropriation bills themselves. As to the policy of calling
a special session or looking to the last appropriation bills, or of
looking to the latter until new bills should be passed in case a
special session should be called, the court has nothing to do. It
is true, this is an unusual provision, but that is no reason why
it should not be given effect. It was deemed advisable by Con-
gress to make it, as it was deemed advisable by the framers of
the Constitution of 1894 to make somewhat similar provisions,
in view of peculiar conditions. Congress, to be sure, although it
extended the voting franchise further than did the constitution
of 1894, did not deem it necessary to go so far in permitting the
old appropriations to be used in the event of a failure to make
new appropriations, for it gave the Legislature one more chance
by providing for an extra session, but it deemed it wise to go
as far as it did in this respect and it limited the length of both
regular and special sessions of the Legislature more than did
the constitution of 1894. The very fact that this is an unusual
provision requires us to hold contrary to usual provisions else-
where.

The remaining question is whether "the last appropriation
bills" which "shall be deemed to have been reappropriated,"
within the meaning of Section 54 of the Organic Act, are the
six-months bills of 1903 or the two-year bills of 1901.

If the Legislature were required to make complete provision,
if any, for the entire biennial period, so that a mere partial pro-

vision should be deemed a total noncompliance with the statute, then both the six-months and the eighteen-months bills would be void and the appropriations of 1901 would be deemed reappropriated. But, in the view that we take, the appropriations of 1903—the six and eighteen-months bills—are good as far as they go, and "the last appropriation bills" may be resorted to in so far as the new bills are deficient. But it is only on the theory that the Legislature was required to provide for all the necessary expenses for the entire biennial period, that the last bills may be resorted to at all. The appropriations of 1901 were the ones to be deemed reappropriated until the Legislature should act and only such "sums appropriated in the last appropriation bills shall be deemed to have been reappropriated" as are necessary to supply the deficiencies, whether any new bills are passed or not. The new bills replace the old ones as far as they go. The sums reappropriated for necessary current expenses are the "last" ones with reference to the time spoken of, that is, until they are replaced and only in so far as they are not replaced by the new ones. There is nothing to indicate that the 1901 bills should be applied first and then that a shift should be made to new bills, if any should be passed, for periods not covered by new bills. The previous bills—1901 or other bills—apply to the corresponding times and purposes in the new biennial period, except in so far as they are replaced by the new bills. The contention that the new six-months bills are the last expression of the legislative will is, no doubt, entitled to much weight, but to this it may be replied, aside from the fact that the question with the court is one of law and not of policy, that these bills are the expression of the legislative will for a certain period only and not for the period now in question. They might have been for the second or third or last six months of the biennial period, but they could not in such case be applied to the first six months of that period; or they might have been complete as to the last six months of the year but not as to the first six months, or for the last six months of one year and not for the last six months of the other year of the biennial period, for there are some neces-

sary expenses that occur in only one-half of each year and some that occur only once in two years. Again, the section in question seems to contemplate only one reappropriation in the event. named, that is, in the event of failure to make the necessary provision at the regular or extra session. If the six-months bills were the ones to be deemed reappropriated, they would have to be deemed reappropriated three times in order to complete the biennial period and that without the condition named happening more than once or happening at all at the time at which any of those three reappropriations would be deemed to be made. But. if the 1901 bills are the ones to be deemed reappropriated, they may, in case of a similar failure at the next regular and extra sessions, be deemed to be reappropriated a second time, but in such case the condition named in the Organic Act would have. happened again. The section in question provides what shall or may be done in case the Legislature in question fails to provide, and that is not to repeat, perhaps several times, what it did provide but to supply its failure by what had previously been provided for the time or expenses corresponding to those not provided for by the Legislature in question. What Congress might have done if it had contemplated the present particular status, it is impossible to say. There are other possible combinations of circumstances more embarrassing than these, but Congress made a broad provision that could be applied to all situations and did not attempt to provide what might perhaps be the very best under each particular situation that might arise. In this particular case or perhaps in any cases that have arisen thus far, it may make little practical difference whether the six-months bills of 1903 or the two-year bills of 1901 are deemed reappropriated to supply the failures for the present biennial period, but, as we construe the Organic Act, the sums appropriated in 1901 are the ones to be drawn upon in the present case.

The wording of the appropriation in either the six-months bill or that of 1901 answers the purposes of the voucher now in question, and if this were all that is required, the appeal would.

have to be sustained. But as the appropriation for 1901 can be drawn upon only by the Treasurer with the advice of the Governor, and as neither of those officers has been shown to have sanctioned such action, the appeal must be dismissed, but without prejudice.

It is so ordered.

*Deputy Attorney General E. C. Peters* for the appellant.
*Holmes & Stanley* for the Auditor.

### OPINION BY GALBRAITH, J.

The questions presented by this appeal, seem to be, at this time, more academic than practical, since the legislature is now in special session, having been convened by the Governor for the purpose of enacting financial legislation, and is indicating an earnest desire to provide by proper appropriation for any and all existing deficiencies however occasioned.

I might be content with this statement were it not for the fact that the decision of the majority of the Court gives a construction to Section 54 of the Organic Act that is so wide of my views of the proper construction of that section that not even "the peculiar conditions", that are said to exist in this Territory, will justify me in passing the question without giving, at least, some of the reasons for my views.

The conclusion announced in the majority opinion can only be arrived at from the view-point that the legislature is not a co-ordinate branch of the Territorial Government but is subordinate and subject to the domination of the Executive or the Judiciary.

The Organic Act divides the territorial government into three branches, namely, "the legislature", "the executive" and "judiciary". Each of these is supposed to be equal and co-ordinate. No one is placed above the other. The duties of each are prescribed in the Organic Law, and each is responsible for a failure or dereliction of duty not to one of the others but to the authority calling it into being, namely, the Executive and the Judiciary to the President of the United States and the legislature to

the people of the Territory who elected them. Neither the Executive nor the Judiciary has any more right or authority to do the work of the legislature when it fails from any cause to do it than the legislature has to perform the duties of the Executive or the Judiciary under like circumstances. The Organic Law does not vest in any one of the coordinate branches of the government any supervisory power over the other.

The power of the legislature extends to "all rightful subjects of legislation". The appropriation of money "for payment of the necessary current expenses of carrying on the government and meeting its legal obligations as the same are provided by the then existing laws", is a rightful subject of legislation. This power includes not only the authority to appropriate money to pay all current running expenses of the government but also the right to determine what shall constitute such "necessary expenses". It follows that whatever authority determines the amount and character of the "necessary current expenses" of the government performs a legislative function.

The foregoing is important in this connection as throwing light on the proper construction to be given Section 54 and also as showing what Congress did not intend by that section. And taken in connection with Section 43, authorizing the Governor to convene the legislature in special session", at any time, without limitation, successfully refutes the imputation that there was a belief or feeling in Congress that the legislature of this Territory could not be fully entrusted with legislative power and that the object of Section 54 was "to preserve the government and that too without unduly prolonged or numerous sessions of the legislature."

The facts to my mind lead clearly to the contrary conclusion. Congress gave to the legislature by the Organic law power over "all rightful subjects of legislation," within the limits of that law and the Constitution of the United States, and provided for regular *biennial sessions* of the legislature, for *extra* sessions and for *special sessions,* at any time the Governor might convene them. If Congress did not intend to provide for *numerous*

sessions of the Territorial legislature in this territory the provisions for *"extra* sessions" and for "special sessions" are useless and meaningless.

To hold that Congress intended by Section 54 to authorize the Treasurer on the advice of the Governor to make payment of the current running expenses of the Government out of the "last appropriation bills", whatever they may be, under the circumstances of this case, is not only to do violence to the language of the section itself but is also to ignore an intention clearly expressed in every other part of the Organic Act, namely, that the legislature should be an integral and coordinate part of the government of this territory. Such a construction renders the legislature a useless luxury and not a necessary constituent part of the Government. If such had been the intention of Congress no provision for a legislature would have been made in the Organic Act. A code of laws would have been adopted for us and the Treasurer and Governor would have been authorized to make the needful appropriations. This is clearly what wisdom with such a purpose in view would have directed to be done and I believe that Congress having the best interest of the people of the Territory at heart, as it has, would have pursued such a course if it had been prompted by the intention imputed to it in the construction given this section.

The opinion of the Court gives to Section 54 the same meaning that would be given to Section 4, Art. 70 of the Constitution of the Republic of Hawaii, from which it is said to have been taken. This provision of the late Constitution reads:

"In case of a failure of the Legislature to pass appropriation bills providing for payments of the necessary current expenses of carrying on the government, and meeting its legal obligations, the Minister of Finance may, with the advice of the Executive Council, make payments for and during the new biennial period, for which purpose the sums appropriated in the last appropriation bill shall be deemed to have been re-appropriated."

There is a similarity between the language of this provision and that of Section 54, still there is a broad difference between them and to hold that the two provisions mean one and the same

thing and authorize the exercise of the same power is clearly erroneous.

The most important distinction between the provisions of the two sections is that fixing or limiting the time within which the extraordinary powers therein prescribed may be exercised by the executive officers therein named. The limitations in Section 4, is that the payments may be made "for and during the new biennial period". This provision is unambiguous and its meaning easily understood. This provision was omitted from Section 54, and another inserted in lieu thereof, namely, "and until the legislature shall have acted the Treasury may", etc. Why this change was made or what the phrase means is involved in no little doubt.

If we assume that Congress intended by this section to confer on the Treasurer and the Governor of the Territory the same power that the Constitution conferred on the Minister of Finance and the Executive Council of the Republic of Hawaii, why should the language be changed and why substitute an ambiguous phrase for one that is clear? It seems to me that the only answer to these questions is that Congress intended to restrict the use of the power therein conferred, whatever that was, to a less time than "for and during the new biennial period", namely, "until the legislature shall have acted". This phrase certainly indicates a belief on the part of Congress that the legislature would act and an intention, at most, to make provision for a possible emergency that might arise between the time of calling an extra session and the time when the legislature "shall have acted".

When the legislature at the extra session made provision by proper appropriations for every necessary current expense of the Territory for the first six months of the ensuing biennial period, the time fixed in the section within which the Treasurer and Governor might draw on the "last appropriation bills" expired, if such power ever existed. The legislature had then *acted* within every proper meaning that term. The power was gone. The occasion prescribed for calling it into existence had

passed and could not possibly recur again until after the adjournment of another regular session of the legislature without having passed the necessary appropriation bills. The section is certainly not automatic. It does not place a lever in the hands of the Treasurer by working which he is enabled, at will, to spring into activity or to suppress into quietude the power claimed for this section or authorize him, whenever an appropriation has been exhausted, or a "necessary current expense" left unprovided for, to declare that the legislature "failed to act" and proceed, on the advice of the Governor, to draw on the "last appropriation bills."

An interpretation that gives to this statute such unusual authority is far fetched and unwarranted. We might expect to find such a provision as Section 54, in the Organic law of a semi-civilized people but not in the law prepared for a people adjudged capable of self-government and particularly in an Organic Act that goes to the extreme of liberality in granting to the people control over their own local affairs. This section is out of place in such a law and does not seem to answer any necessary purpose therein.

It should not be construed to authorize the Treasurer and Governor to make the appropriations for the reasons above given and it should not be construed to reappropriate money for the reason that it lacks one of the essential features of such a statute, namely, certainty. The Governor and the Treasurer thought that one set of appropriation bills were reappropriated and proceeded to make payments therefrom. Now this court decides that they were mistaken and that another and different set of appropriations should have been drawn against.

The legislature adjourned in May, 1903, and the "necessity" for these appropriations arose on January 1, 1904, still no one will be able to tell what money was reappropriated by this self-acting automatic Section 54, until the decision in this case is filed. If the use of these appropriations has been so "absolutely essential" to the preservation of the Territorial Government, as is contended, the poor old territory would have been done for

long before the decision in this case is filed for that is as early as it could be known with certainty which were the "last appropriation bills." As a matter of fact we know that the territory has not gone into insolvency, that she is still performing her useful functions, that life and property are as safe here now as at any former time and that her efficiency has not been perceptibly impaired and none of the employees have voluntarily relinquished their offices for the reason that the legislature "failed to act" in making proper appropriations to pay the expense of the same.

It is suggested that some calamity threatens the territory if this section should be held nugatory and that the construction placed upon it is necessary to the preservation of the territorial government. The fear and the claim are equally imaginary and unfounded. The Organic law of this territory has now been in force for almost four years and only one time during this period has any attempt been made to obtain relief from the power claimed for this section and this attempt was an utter failure or at least the imagined relief was not essential for the Territorial Government was preserved without the relief that this section was supposed to afford.

Another fatal objection to the construction given this section is that under it a governor, who might be so disposed, could by failure to sign or return the appropriation bills sent him within ten days of the adjournment of the session, and most appropriation bills go to the Governor within this time, defeat their becoming law and fall back on the "last appropriation bills" on the claim that the legislature had "failed to act." In other words it would give the Governor the power to choose between the appropriations bills of the extra session or those of a former session—"the last appropriation bills." I have too high a regard for the wisdom of the United States Congress to believe that it would be possessed of an intention to give the Governor and Treasurer of a Territory of the United States, such arbitrary power over the public revenues.

The account of the petitioner is no doubt a just claim against

the Territory and one that ought to be paid but it cannot be paid until the legislature makes an appropriation for that purpose and until such time the Auditor may rightfully refuse to issue a warrant for it. The appeal should be dismissed.